**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2022-CA-01251-COA**

**ROBERT CLARK AND BETTY HAGGARD**                           **APPELLANTS**

**v.**

**ALFA INSURANCE CORPORATION**                                    **APPELLEE**

DATE OF JUDGMENT:            11/16/2022
TRIAL JUDGE:                         HON. HENRY ROSS
COURT FROM WHICH APPEALED:   WINSTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:    C. MAISON HEIDELBERG
                                              C. HUGH HATHORN
                                              GINNY Y. DELIMAN
ATTORNEYS FOR APPELLEE:       WALKER R. GIBSON
                                              REBECCA S. BLUNDEN
NATURE OF THE CASE:            CIVIL - INSURANCE
DISPOSITION:                        AFFIRMED - 07/23/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     This case stems from a motor vehicle accident where Betty Haggard collided with

cows owned by Robert Clark in Winston County, Mississippi.  Haggard suffered injuries

and incurred damages from the collision; hence, she sued Clark and Alfa Insurance

Corporation (Alfa), with whom Clark had his homeowner's insurance policy.  After

discovery, Alfa moved for declaratory and summary judgment in the Circuit Court of

Winston County, arguing that Alfa's farming exclusion in Clark's homeowner's policy

excluded liability coverage for Haggard's bodily injury and personal property claims.  The

trial court agreed, finding Clark's cattle made up an agricultural enterprise falling within the

exclusion and granted Alfa declaratory and summary judgment.[1]  Haggard and Clark (the

Appellants) appealed.[2]

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     On November 6, 2018, Clark bought ten black heifers for $9,000,[3] and they were

delivered to Clark's property the same day.[4]  That evening, unable to see the cattle in the

dark, Haggard's vehicle collided with one or more of the heifers on Mississippi Highway

395, near Clark's property in Winston County.  Haggard suffered bodily injuries and

incurred damages.

¶3.     At the time of the accident, Clark had an Alfa homeowner's insurance policy in force,

insuring Clark against certain liability claims set forth in the policy.  Coverage E insured

Clark for personal liability, but Alfa had no obligation to defend Clark if the policy did not

apply.  Coverage F insured Clark for medical payments to others, including medical

payments for bodily injuries to "a person (other than an insured) off the insured location,

provided the injury . . . is caused by an animal owned by or in the care of an insured."  The

---

[1] The trial court issued an order under Rule 54(b) of the Mississippi Rules of Civil Procedure, certifying the judgment as final and appealable.

[2] For purposes of this appeal, Clark filed a joinder with Haggard, thereby adopting her appellate briefs and record excerpts.

[3] Clark paid half the purchase price of the heifers with a check from his timber harvesting company and the other half with cash.

[4] Clark put the heifers behind his home in an enclosure using four-strand barbed wire.  This property abuts Highway 395.  Clark also owns approximately 620 acres near his home, but the cows did not live there.

policy, however, excluded certain activities from Coverage E and F, specifically: "bodily injury or property damage arising out of *business or farming* engaged in by an insured . . . ." (Emphasis added). The policy defined "farming" as "*the operation of an agricultural* or aquacultural *enterprise* or operation of a road-side stand." (Emphasis added).

¶4. In March 2020, Haggard sued Clark for negligence, seeking damages for bodily injuries. Haggard also sued Alfa, seeking a declaratory judgment that Alfa's "policy applies to provide liability insurance . . . and that Alfa is obligated to defend and indemnify Mr. Clark against any loss arising from the accident . . . ." Haggard also sought "medical payments coverage" from Alfa. In May 2020, Alfa sent Clark a letter reserving its right to deny coverage for Haggard's claim for damages, as well as to deny Clark a defense and indemnity under the policy's farming exclusion; however, Alfa continued to provide Clark with defense counsel under the terms of the policy.

¶5. During discovery, Alfa requested from Clark details regarding his ownership of the cows. In its interrogatories, Alfa asked Clark about his general history of livestock ownership. Clark responded that he had never owned cattle or other farm animals until the purchase of the ten heifers. He has not bought any further cattle, only owning them and their offspring. Alfa also asked Clark to identify the purpose of the cattle and how they had been used from the purchase date to the current date (February 2021). The defendant responded: "At the time of the purchase, Clark did not have any specific plans for the cows, other than to purchase them in hopes of attempting to raise them with his son. The cows had calves

this past fall. Clark has not sold any of the original cows, and he only recently sold five of their offspring."

¶6.    Additionally, Alfa requested the production of Clark's income tax returns from 2016 through 2020, a request Clark objected to as confidential and irrelevant.[5] Ultimately, Clark provided a copy of his 2018 federal and state income tax returns, along with an affidavit authenticating his tax returns and responding to other interrogatories by Alfa.[6]

¶7.    In Clark's 2018 federal income tax return Form 1040, he filed a Schedule F, Profit or Loss From Farming, listing his "principal crop or activity" as "timberland," and affirming that he "materially participate[d]" in this operation during 2018. Additionally, Clark listed $9,000 as the "cost of livestock," and $9,000 as a loss in the next line of the schedule's income section, which offset his farming income. There was no income shown for livestock sales. Further, Clark listed $1,624 in livestock feed as another deductible expense for his farming income.

¶8.    After discovery, Alfa moved for summary judgment and/or declaratory judgment, arguing that the farming exclusion applied, and there was no genuine issue of material fact disputing that the cattle were part of Clark's farming operation. Therefore, Alfa claimed it

_____

[5] When Clark refused to provide his tax returns, Alfa moved to compel production. In response, Clark filed a motion for a protective order, arguing Alfa was not entitled to Clark's tax returns or any information about the cattle beyond the date of the accident. Alfa and Clark eventually came to an agreement over their discovery dispute.

[6] Clark's affidavit also stated that as of February 2022, Clark had not purchased any other cattle before or after November 2018, described how he paid for the heifers and gave his gross receipts from his principal farming business of timberland.

4

was entitled to a declaratory judgment that it was under no contractual obligation to defend the claim against Clark or provide him liability coverage. Both Clark and Haggard opposed Alfa's motion.

¶9.     In October 2022, the trial court granted summary judgment in favor of Alfa, finding no genuine issue of material fact concerning the applicability of the policy's farming exclusion; accordingly, Alfa's insurance coverage did not defend or indemnify Clark against Haggard's claims as a matter of law. The trial court pointed to Clark's 2018 tax form Schedule F, which reported farm expenses for the livestock and feed. The trial court also found, as a matter of law, there was no ambiguity in the term "enterprise" found in the policy's farming exclusion, as Haggard and Clark had argued, which would require a jury determination of its meaning. The trial court rejected Haggard's and Clark's argument that because there was no evidence of income in 2018 from the livestock, the cows could not be considered an "agricultural enterprise." The court noted that the phrase "agricultural enterprise" was not defined in the policy.[7] As far as the term "enterprise," the trial court found "to define enterprise in an economic sense" would be "extremely difficult and unwieldy because so many variables could apply."[8]

---

[7] Because it was uncontested that raising cattle was "agricultural," the focus of the parties' arguments was on the meaning of "enterprise."

[8] Clark asserted that growing a garden or keeping horses are agricultural pursuits as well and probably do not fall within the farming exclusion, encouraging the inference that his cattle purchase would be a hobby. The court, however, found that "[i]n evaluating an issue as a matter of law, the court [could] not divorce itself from common sense or life experiences," discussing how an enterprise, "large or small," could "lose money . . . in its

5

¶10. The trial court found Schedule F a "more concrete expression" of Clark's intent to engage in an agricultural enterprise with the cattle than his response to Interrogatory 5, where he stated he had no specific plans for the cows other than "to raise them with his son." Further, the court found that Clark's plans with his son could also be considered an agricultural enterprise. The court also noted Clark's later interrogatory responses in June 2021, where he had recently sold five of the yearling calves born of the original ten cows. The court stated that "[e]very enterprise has to have a beginning" and found that Clark's cattle endeavor, "although in its infancy, was an agricultural enterprise" falling within the farming exclusion.[9] Even though Mississippi jurisprudence requires ambiguities be resolved in favor of the insured, thereby favoring insurance coverage, the court found Alfa's farming exclusion "clear and unmistakable." Alfa had insured a homeowner's risk, not a farm's risk.

## STANDARD OF REVIEW

¶11. An appellate court reviews the trial court's grant or denial of summary judgment de novo. *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶8) (Miss. 2013). The evidence is viewed in the light most favorable to the nonmoving party. *Id.* Summary judgment will be appropriate if the "pleadings, depositions, answers to interrogatories and admissions on

---

early years, and does not have to be a significant source of income." Further, the court noted that gardening, horses, and other agricultural pursuits were not included on Clark's 2018 income tax return, "inviting the conclusion that if pursued," they would be considered "hobbies."

[9] The trial court further stated that upon purchasing the cattle, Clark should have notified Alfa before delivery so that "the appropriate coverage could have been instituted." We agree.

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at (¶10) (quoting M.R.C.P. 56(c)). The movant carries the initial burden of persuading the trial court that no genuine issue of material fact exists and judgment as a matter of law is proper. *Id.* at (¶11).

## ANALYSIS

¶12. The Appellants argue that the trial court erred in finding the policy's farming exclusion applied, contending the court's interpretation of the term "agricultural enterprise" as unambiguous was error, and arguing that a jury should determine the meaning. Further, the Appellants claim that on the date of the accident there existed a genuine issue of material fact about whether Clark intended to use the ten cows for an agricultural enterprise. We shall discuss each issue in turn.

### I.    Interpretation of the Farming Exclusion

¶13. The Appellants argue that there is ambiguity in the policy's farming exclusion with the meaning of the phrase "agricultural enterprise," which is the definition of "farming." Further, they claim the trial court improperly construed the policy exclusion in favor of Alfa instead of the insured, Clark.

¶14. "The language and provisions of insurance policies are viewed as contracts and are subject to the same rules of interpretation as other contracts." *Hayne v. The Drs. Co.*, 145 So. 3d 1175, 1180 (¶12) (Miss. 2014) (citing *Hankins v. Maryland Cas. Co./Zurich Am. Ins.*

7

*Co.*, 101 So. 3d 645, 653 (¶18) (Miss. 2012)). If the contract's "language is clear and unambiguous, then the language of the policy must be interpreted as written." *Id.* The reviewing court "should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Miss. Farm Bureau Cas. Ins. Co. v. Powell*, 336 So. 3d 1079, 1084 (¶10) (Miss. 2022) (quoting *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (¶8) (Miss. 1998)). "Ambiguities exist when a policy can be logically interpreted in two or more ways[;] . . . [h]owever, ambiguities do not exist simply because two parties disagree over the interpretation of a policy." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (¶13) (Miss. 2008) (citations omitted). If ambiguities exist, they "must be resolved in favor of the non-drafting party." *Id.* "Exclusions and limitations on coverage are construed in favor of the insured." *Id.* However, this "principle does not permit the creation of ambiguity where there is none." *Boteler v. State Farm Cas. Ins. Co.*, 876 So. 2d 1067, 1069 (¶9) (Miss. Ct. App. 2004). "Language in exclusionary clauses must be 'clear and unmistakable,' as those clauses are strictly interpreted." *Martin*, 998 So. 2d at 963 (¶13) (citing *Miss. Farm Bureau Mut. Ins. Co. v. Jones*, 754 So. 2d 1203, 1204 (¶8) (Miss. 2000)).

¶15. The term "agricultural enterprise" was not defined in Alfa's policy; however, the trial court found, as a matter of law, no ambiguity in the term "enterprise." The Appellants argue the policy's lack of a definition and the multitude of possible definitions for "enterprise"

8

made the term ambiguous and required a jury determination. The Appellants point to Black's Law Dictionary's definition of "enterprise" to further their argument that an "agricultural enterprise" requires a profit ("an organization or venture, esp. for business purposes"). *Enterprise*, Black's Law Dictionary 672 (11th ed. 2019). They argue that since Clark had no profit from the cattle at the time of the accident, the farming exclusion does not apply. We disagree.

¶16. The trial court explained that the reason "enterprise" was not defined in the policy was in order to encompass a variety of situations—large or small, income-making or not. The fact the term is not defined in the policy does not make it ambiguous. The court refused to "divorce itself from common sense or life experiences," citing a broader definition from Merriam Webster's Collegiate Dictionary, which defined enterprise as "a systematic purposeful activity." The court did not "adopt" this definition over others, as the Appellants claim, but cited it as an example of a broader, non-business definition because "to define the term in an economic sense [for purposes of the policy exclusion] would be extremely difficult and unwieldy because so many variables could apply."[10] We agree.

¶17. Under the policy, "farming" includes any "agricultural or aquacultural enterprise."[11]

_____

[10] When terms or phrases are not defined in a policy, "those words are afforded their ordinary and popular meaning." *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (¶15) (Miss. 2004) (citing *Blackledge v. Omega Ins. Co.*, 740 So. 2d 295, 298 (¶7) (Miss. 1999)).

[11] The Appellants cite no caselaw where the term "farming" or its definition have been found ambiguous.

As the trial court found, an "enterprise" is not synonymous with a "business," so "farming" does not have to include a "business." In the policy, "farming" and "business" are defined separately.[12] Further, the disjunctive phrase "business or farming" is used over ten times in the policy, while the conjunctive phrase "business and farming" is never used. Losses from business *or* farming are not covered in the policy. The farming exclusion's language is clear and unmistakable—personal liability and medical payment coverage is excluded for "bodily injury or property damage arising out of business or farming engaged in by an insured . . . ." It is not unreasonable that purchasing, raising, feeding, breeding, selling, and caring for cattle is an "agricultural enterprise" even when no profit is involved. Moreover, the Appellants make much of the intended use of the cattle (whether for profit or hobby); however, their intended use would only matter when applying a business exclusion. The farming exclusion applies to all agricultural enterprises, regardless of whether they are for a business or not. As the trial court stated, "[e]very enterprise has to have a beginning." Even though in its "infancy," Clark started a cattle raising "enterprise" when he bought the ten heifers, regardless of whether they generated a profit; therefore, the farming exclusion applies.

¶18. Finally, the trial court aptly noted "[i]n all fairness, Alfa insured a homeowner's risk,

---

[12] The policy has a lengthy definition for "business" beginning with an "employment, trade, occupation, or profession engaged in on a full-time, part-time or occasional basis," and including any "activity engaged in for money or other compensation . . . ." A professional or profit motive is repeated throughout the definition.

10

as reflected in Mr. Clark's policy and in the premiums collected." Clark's homeowner's policy did not insure a farm. The Appellants attempt to have the accident covered by challenging the farming exclusion. Instead, Clark should have notified Alfa before the heifers were delivered and obtained appropriate insurance coverage.

## II. Evidence of the Farming Exclusion's Application

¶19. The Appellants argue that there is no evidence Clark used the cattle for a "farming enterprise" at the time of the accident or, alternatively, that there is a genuine issue of fact about whether the farming exclusion applies. Thus, they contend that the farming exclusion does not apply and that summary judgment was improper.

¶20. The Appellants claim that the sole evidence Alfa presents that Clark had a cattle farming enterprise is irrelevant, i.e., Schedule F of Clark's 2018 individual income tax return, which lists the cost basis of the cows as $9,000 and Clark's authenticating affidavit. The Appellants note the only farming activity listed on Schedule F is "timberland," not livestock, and no income was reported from the cattle, which "conclusive[ly]" shows that as of 2018, Clark "was not in the cattle business." Alternatively, the Appellants argue that Clark's tax return only shows the use of the cows at the time he prepared the return, which was after the accident in November 2018. Further, at the time of the cattle's purchase and same-day accident, the Appellants point to Clark's interrogatory response that he had "no specific plans for the cows" except to "raise them with [his] son," indicating their purchase

11

was for a "hobby" rather than an agricultural enterprise.[13]

¶21.    The trial court properly found Schedule F, Clark's authenticating affidavit, and his interrogatory responses as evidence that no genuine issue of material fact existed regarding whether the farming exclusion applied to Clark's cows.  The information on Schedule F and the affidavit were relevant.  While Schedule F showed "timberland" was Clark's "principal crop or activity," that does not mean it was the only farming activity in which he was engaged.  Further, as stated earlier, income from the cattle or their sale was not necessary to show the cows were an agricultural enterprise—the cattle's expenses were sufficient to show they were an "agricultural enterprise."

---

[13]  The Appellants cite several out-of-state cases in support of their argument that Clark's cattle were not part of an "agricultural enterprise" for purposes of the farming exclusion; however, these cases are distinguishable because they do not deal with a farming exclusion at all but, instead, a business exclusion. *See Allstate Floridian Ins. Co. v. Cent. Mut. Ins. Co.*, No. 3:05-CV-1043-J-25MCR, 2007 WL 9719001, at *2-3 (M.D. Fla. Mar. 30, 2007) (In collision between tractor-trailer and bull, court found genuine issue of material fact as to whether business-pursuits exclusion applied when insureds argued they raised cattle as personal pastime and not for financial gain, but insureds filed Schedule F and testified about income from cattle sales.); *Granger v. Guillory*, 819 So. 2d 477, 483 (La. Ct. App. 2002) (In accident between vehicle and horses, court affirmed that business exclusion did not apply when insured testified that "raising and selling horses is more like a hobby and a 4-H project."); *Edwards v. Trahan*, 168 So. 2d 365, 367-68 (La. Ct. App. 1964) (In collision between vehicle and hay bailer, court affirmed that insurance coverage applied. Insured was engaged in non-business pursuit for purposes of business exclusion when at the time of accident he was transporting hay to feed cows owned by family for personal use.); *State Farm Fire & Cas. Co. v. Nivens*, No. 12-00151, 2014 WL 4793987, at *10 (D.S.C. Sept. 25, 2014) (In three vehicle accident with bull, court concluded that insured was not engaged in business pursuit with cattle for purposes of business exclusion when he never received a profit from the sale of cattle; instead, they were a source of "enjoyment" "and way of life.").

¶22. The Appellants continue mistakenly to equate an "agricultural enterprise" to a "business" in the farming exclusion. As discussed above, in Alfa's policy, "business" and "farming" are two separate exclusions. The trial court properly rejected the argument that because the cows did not generate any income in 2018, they were not an agricultural enterprise. An agricultural enterprise, as defined in the policy, does not always have to generate income as a business would, but a business exclusion could apply to a farming operation. *See Hanover Am. Ins. Co. v. White*, No. CIV-14-0726-HE, 2015 WL 4629318, at *2-3 (W.D. Okla. Aug. 3, 2015) (In accident where bull escaped and attacked individual who died, the court found the business exclusion to homeowner's policy applied to insured's cattle operation because he treated it like a business for tax purposes, suggesting a profit motive.). If the Appellants' argument were correct, only one exclusion, "business," would be necessary. Finally, Clark's 2018 tax return was filed after the accident but before he filed his complaint in March 2020, lending credence to the accuracy of the information on the return. The information on the 2018 return would obviously refer to 2018. Since the cattle were not purchased until November 2018, and the accident occurred on the same day, the tax return information would be relevant and timely.

¶23. Alternatively, the Appellants argue that there is a conflict of evidence, and thus a genuine issue of material fact about whether the cattle were part of a "farming enterprise," which precludes summary judgment. It is well established that in the context of insurance cases, summary judgment is improper where there exists a material question of fact with

13

regard to coverage. *Wright v. Allstate Indem. Co.*, 618 So. 2d 1296, 1300 (Miss. 1993). The Appellants attempt to set aside Schedule F by claiming the information in tax returns cannot be dispositive evidence that Clark purchased the cows for use in a "farming enterprise." They cite a case from Louisiana for the proposition that "[s]tatements made on a federal income tax return do not constitute conclusive proof for purposes of summary judgment." *Washington v. Guillotte*, 268 So. 3d 1048, 1056-57 (La. Ct. App. 2018). Further, the Appellants argue Schedule F is contradicted by evidence indicating the cows would not be used for an agricultural enterprise: Clark had no specific plans for the use of the cows at the time of purchase; Clark had no other cattle at the time of their purchase; Clark never bought more cattle; and the cattle resided behind Clark's residence corralled by a barbed-wire fence, not his 620-acre property.

¶24. Clark's Schedule F is valid evidence. Precedent shows that insurance litigation involving the same issues as here often involves the insured's Schedule F as proof. *Washington* is readily distinguishable. In *Washington*, a factually similar case, the Louisiana appellate court held that the trial court erred in relying *solely* on statements made in the insured's federal income tax returns, thereby reversing summary judgment for the insurer. *Id.* at 1050, 1056. Here, the trial court's ruling relied not just on Schedule F but also Clark's interrogatory responses and affidavit. Further, Clark cites no caselaw from Mississippi that the information in Schedule F cannot be used as evidence for determining summary judgment.

¶25. Additionally, the evidence the Appellants cite does not create a genuine issue of material fact regarding coverage. As the trial court noted, there is no conflict between Clark's interrogatory response that he had no "specific plans" for the cattle "other than to . . . raise them with his son" and his fledgling cattle-endeavor expenses on Schedule F. Clark can still engage in an agricultural enterprise with his son even though he has not bought any cattle in the past or planned to in the future, regardless of where he kept them. The trial court properly found no genuine issue of material fact regarding whether, on the date of the accident, Clark's cows were part of an agricultural enterprise.

## CONCLUSION

¶26. The trial court did not err in finding the term "agricultural enterprise" in the policy's farming exclusion unambiguous as a matter of law. Further, reviewing the evidence in the light most favorable to Haggard and Clark, there was no genuine issue of material fact concerning the application of the farming exclusion in Clark's homeowner's policy; therefore, summary judgment in favor of Alfa was appropriate as a matter of law.

¶27. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

15