This is a Hurricane Camille case. Vallie L. Lunday brought suit against the Lititz Mutual Insurance Company in the Circuit Court of Harrison County on a fifteen thousand dollar fire and extended coverage insurance policy insuring an old three-story rooming house at 124 Fayard Street in Biloxi.
This rooming house was located about 1 block east of the Buena Vista Hotel and about 1/2 block north of the beach. During Hurricane Camille on August 17, 1969, this house was severely damaged, with most of the damage being to the lower part. Lititz, in its answer, admitted $2500.00 damages because of windstorm, and after the jury returned a verdict for the defendant judgment was entered for the plaintiff for the $2500.00 admitted damage.
The policy was not an all-risk policy (Comprehensive Dwelling Policy). It was a fire and extended coverage policy with these provisions:
 "EXTENDED COVERAGE (Applies only in consideration of Additional Premium as shown on the first page of this policy) —
 In Consideration of the premium for this coverage, and subject to the provisions herein and in the policy to which this Extended Coverage is attached including endorsements thereon, This Policy is Extended to Insure Against Direct Loss by Windstorm,
Hail, Explosion, Riot, Riot Attending a Strike, Civil Commotion, Aircraft, Vehicles, and Smoke, Except as Hereinafter Provided.
 * * * * * *
 Water Exclusion: This Company shall not be liable for loss caused by, resulting from, contributed to or aggravated by any of the following —
 (a) flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;" (Emphasis added).
The evidence was undisputed that during Hurricane Camille tidal water rose inside the house to a height of 4 feet above the first floor while outside the tidal water was 6 1/2 feet deep. In addition to heavy damage to the floor and plastered walls, there was damage to the brick piers, the mud sills and floor joists apparently caused by a wracking or twisting motion of some kind. The supporting dirt had been washed or scoured out around some of the brick piers.
The first assignment of error was that the verdict of the jury was against the overwhelming weight of the evidence and evinced bias, passion and prejudice on the part of the jury. There is no merit to this contention. There was ample evidence to support the verdict of the jury.
In his second assignment of error, the appellant contends that the court erred in not allowing S.O. Brown "to testify as to specifically what damage resulted from which peril." Brown did not inspect the Lunday property until five months after Camille, yet Brown was allowed to testify at great length and in minute detail. The record is silent as to what else Brown might have said if he had been allowed further latitude. The trial judge did rule at one stage:
 "BY THE COURT: He is answering the ultimate question now which is for the jury to decide. Now as an expert he can tell us exactly what he found there and it would be valuable to the Court and to the Jury in telling us the amount of pressure that a wind of certain velocity will exert on a building, the amount of pressure that water will exert, what *Page 698 
effect on the increase in pressure that wave action will have and that sort of thing, but to say that this was done by wind is a question for the jury. He can tell us up to how he arrived that this is the wind but just at this point saying this was done by wind that would not be admissible, in my opinion.
 "BY MR. STECKLER: Yes Sir.
 "BY THE COURT: In other words, don't cut the corners, it might take all day, but he can tell us how he arrived at this.
 "BY THE COURT: HAVE THE JURY COME BACK."
Appellant next contends that:
 "The lower Court erred in allowing counsel for the Appellee in his argument to the jury to promise the jury that, `If you will bring back a verdict for the Defendant, I will see to it that Mr. Lunday is paid $2500.00'. The Court further erred in including in its judgment that the Defendant should pay the said $2500.00 to Plaintiff."
The record is silent as to any objection at the time by appellant's counsel, and this alleged error was not preserved for review by a bill of exceptions or in any other manner. We note that the insurer in its answer admitted $2500.00 of windstorm damage, and, of course, the insurer is bound by its pleadings. Woodrich v. St. Catherine Gravel Co., 188 Miss. 417, 195 So. 307
(1940). The trial court was not in error in its judgment that the defendant pay admitted damage of $2500.00 to the plaintiff.
The fourth assignment of error was:
 "The lower Court erred in placing the burden on Plaintiff-Appellant to go forward with the evidence on the affirmative defenses rather than having this burden shift to the Defendant."
The appellant cites Commercial Union Insurance Company v. Byrne, 248 So.2d 777 (Miss. 1971) in support of this contention. That case involved an insurance policy insuring against all risks except those specifically excluded. In insurance parlance, such a policy is known as a CDP (Comprehensive Dwelling Policy). The Water Exclusion was specifically pleaded by Commercial Union as an affirmative defense, and Commercial Union alleged "That Defendant would show unto the Court that the total damage to Plaintiff's property . . . was caused by or resulted from or was contributed to or aggravated by flood. . . ."
In an all-risk (CDP) policy where an exclusion is specifically pleaded as an affirmative defense the burden of proving such affirmative defense is upon the insurer, as we held inCommercial Union.
In the instant case, the policy was not a CDP; it was a fire policy to which had been added by endorsement for an additional premium an extended coverage clause, insuring against direct loss by windstorm. We note also that the Answer of Lititz is mostly a denial of the right of the appellant to recover under the windstorm clause.
Lititz ended its Answer by offering to pay $2500 which it alleged was:
 "[T]he very maximum damage which could have been done to the plaintiffs' property as a result of the windstorm during Hurricane Camille. . . .
 "And now having fully answered the defendant demands that it be dismissed with all costs of this action."
We held in Commercial Union v. Byrne that it was a question for the jury and that the insurer was not entitled to a peremptory instruction that Byrne could not recover anything for damages to the household contents.
In the case at bar, the question was submitted to the jury as to what damages *Page 699 
were caused by wind and what damages were caused by water, and there was ample evidence to support the verdict of the jury that the admitted damage of $2500.00 was all that was caused directly by windstorm.
The trial judge was correct in refusing to grant plaintiff's instructions 9, 11 and 12, and was correct in granting defendant's instructions 5, 8 and 10. There are differences between a Comprehensive Dwelling Policy (CDP) and a fire and extended coverage policy. The trial judge correctly instructed the jury that the burden of proof was on the plaintiff to prove that the damages sustained were covered by the peril insured against, that is, by direct action of the wind. Necessarily, when plaintiff proves that, he negatives the proposition that the damages were caused by tidal or surface water. The plaintiff recognized that the burden of proof rested squarely on his shoulders when he asked for and was granted instructions 6 and 8:
 "The Court instructs the Jury for the Plaintiff that if you believe from a preponderance of the evidence in this case, that any of the damage to the dwelling home of Vallie L. Lunday, if any you so find, resulted solely directly and proximately from wind storm on the night of August 17, 1969, then it is your sworn duty to return a verdict for the Plaintiffs."
 "The Court instructs the Jury for the Plaintiff, that one of the factual issues in this lawsuit is whether the loss to Plaintiff's insured property was caused directly by windstorm, or whether the loss to Plaintiff's insured property was first caused by flood, surface water, waves, tide water, or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not. You are instructed that if you believe from a preponderance of the evidence in this case, that any of the loss to insured's property of Plaintiff was first caused directly by reason of wind storm, then it is your sworn duty to return a verdict for the Plaintiffs."
Instructions 9, 11 and 12 were inconsistent with and in conflict with instructions 6 and 8 which plaintiff had already secured. The jury simply found that the plaintiff did not meet the burden of proof which plaintiff clearly recognized was his burden, that is, to prove more than $2500.00 windstorm damage.
The judgment of the trial court is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER and SMITH, JJ., concur.
 *Page 77