# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00252-SCT

*DR. STEVEN HAYNE*

*v.*

*THE DOCTORS COMPANY AND THE DOCTORS COMPANY INSURANCE SERVICES*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/2012 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | SAMUEL S. MCHARD |
| | DANIEL WAIDE |
| | WILLIAM E. WHITFIELD, III |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER TYLER KENT |
| | JOHN MICHAEL DUNCAN |
| ATTORNEYS FOR APPELLEES: | KAREN KORFF SAWYER |
| | WILLIAM E. WHITFIELD, III |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 08/28/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Dr. Steven Hayne seeks reversal of the trial court's grant of summary judgment in favor of his former medical malpractice insurer, The Doctors Company and The Doctors Company Insurance Services (collectively, "The Doctors"). The Doctors has refused to cover Hayne for lawsuits brought by exonerated criminal defendants against whom Hayne had

testified as a State's witness. Kennedy Brewer[1] sued Hayne for malicious prosecution, fraud, and negligent misrepresentation in the Circuit Court of Noxubee County, Mississippi, and later in federal district court.[2] Hayne sought coverage under a medical malpractice insurance policy he had purchased from The Doctors. The Doctors declined to provide coverage, arguing that Brewer was not a "patient" under Hayne's medical malpractice insurance ("medmal") policy, and that the company therefore was under no obligation to cover Hayne in relation to the suit brought by Brewer.

¶2. Dr. Hayne filed suit in the present action against The Doctors, arguing that The Doctors knew when it issued the policy exactly what kind of medicine he practiced, and that the insurance policy covered him for the types of medical malpractice suits he might face, including the suit filed by Brewer. The Doctors moved for summary judgment, arguing that the policy language was clear and unambiguous in the kind of coverage provided, and that this lawsuit by an exonerated nonpatient regarding testimony that Dr. Hayne had given as an expert witness did not fall within the policy's coverage. The Circuit Court of the First Judicial District of Hinds County agreed, and, despite a lack of in-depth discovery, granted the motion for summary judgment. We affirm.

---

[1]Brewer was convicted of murder in large part due to Hayne's expert testimony at Brewer's trial regarding Hayne's autopsy of the murder victim. After fifteen years in prison, seven years of which Brewer spent on death row, Brewer was exonerated on the basis of DNA evidence which excluded him as the perpetrator.

[2]Hayne avers that he also has been sued in an unrelated case by Tyler Edmonds, another exonerated criminal defendant against whom Hayne testified. However, Hayne has not attached a copy of the Edmonds complaint. In its brief, The Doctors informed this Court that Edmonds filed a notice of claim against Hayne, but never followed through with an actual lawsuit.

**FACTS AND PROCEDURAL HISTORY**

¶3.    Dr. Steven Hayne is a medical doctor licensed in Mississippi who practices "forensic, anatomical, and clinical pathology." Over the course of his career, Hayne often has worked as a forensic pathologist in death investigations for the State of Mississippi. In 1992 he conducted an autopsy on the body of Christine Jackson, a three-year-old girl who was raped and murdered in Noxubee County near Brooksville, Mississippi. During the autopsy, he observed what he described as bite marks. Along with Dr. Michael West, a dentist, Hayne identified Kennedy Brewer, the boyfriend of the victim's mother, as the person who had made those marks, based upon a comparison with an upper-palate imprint obtained from Brewer. At Brewer's trial, Hayne testified that he had no doubt that nineteen of the marks on the victim's body had been made by Kennedy Brewer. This so-called bite-mark evidence was the "centerpiece of the prosecution." Brewer was convicted of capital murder and sentenced to death.

¶4.    However, semen had been found on the victim, and years after his conviction, Brewer was able to gain access to the semen for DNA testing. The testing excluded Brewer as the source of the semen that had been found on the deceased victim, and his capital murder conviction was vacated in 2002. The State persisted in its pursuit of rape and murder charges against Brewer, based in part on the bite-mark testimony provided by Hayne. Thus, Brewer was moved from the state prison system to the Noxubee County Jail to await retrial. But, after further DNA testing positively identified Albert Johnson as the perpetrator–a man the police initially had considered a suspect–Brewer was released in 2007. Overall, Brewer had spent fifteen years behind bars, with seven of those on death row. In 2008, Brewer filed suit

against Hayne in the Noxubee County Circuit Court. That lawsuit eventually was dismissed and refiled in the United States District Court for the Southern District of Mississippi. Brewer sued Hayne for malicious prosecution, fraud, and negligent misrepresentation.

¶5.     Hayne's insurance policy with The Doctors ran continuously from July 1987 to July 1, 2003.[3] Hayne states that, when he obtained this coverage, he provided extensive information to The Doctors regarding his medical practice, which included information about his work as a pathologist for the State of Mississippi in criminal prosecutions. Neither the application for this policy nor other underwriting memoranda or documents was placed before the trial court in this case. When the Brewer complaint was filed, Hayne notified The Doctors. The Doctors informed Hayne that his policy did not provide coverage for the type of suit that Brewer had filed against him. In 2011, Hayne brought suit against The Doctors in the Circuit Court of the First Judicial District of Hinds County, arguing that his medmal policy did, in fact, cover the claims made against him by Brewer and another exoneree, Tyler Edmonds.

¶6.     The Doctors argued that the unambiguous language of the policy excluded coverage for this type of claim. The language of the policy states that The Doctors will defend Hayne for claims brought against him for incidents occurring during the coverage period, with "claim" defined as a suit alleging "injury, disability, sickness, disease, or death *to a patient* arising from [Hayne's] rendering or failing to render professional services. . . ." (Emphasis

---

[3]The policy provided a $5 million per claim limit, with a maximum annual payout limit of $8 million. After that policy expired, Hayne purchased another policy from The Doctors, with limits of $1 million per claim and $3 million aggregate for the period between July 1, 2003, and July 1, 2004.

added). According to The Doctors, because Brewer was never a patient of Hayne's, and Brewer alleged injuries only to himself, then the plain language of the policy precluded coverage for Hayne. Additionally, The Doctors argued that the policy contained an exclusionary clause which denied coverage for work Hayne performed as a governmental employee, which The Doctors contended that Hayne was when he testified for the State of Mississippi against Brewer. The Doctors argued that the language was clear, that Hayne bore the responsibility of reading and understanding the terms of his insurance policy, and that he was not entitled to coverage in the Brewer and Edmonds cases. Hayne argued that the policy should be construed to cover him, and that The Doctors should be estopped from denying coverage because it had defended him in a similar suit in Louisiana several years earlier.

¶7.    As part of pretrial discovery, Hayne requested information regarding the previous Louisiana case in which he contended The Doctors had provided him coverage, as well as documents related to his policy such as his application for insurance and underwriting memoranda, in hopes of establishing what The Doctors had known about Hayne's practice when it issued the policy. The Doctors replied that the only thing required to decide this case was the policy itself, and that any further discovery would be vexatious and burdensome. The Doctors requested a protective order from such discovery. Less than a month later, before there was a ruling on the motion for a protective order, and despite the lack of production of the requested documents, The Doctors filed its motion for summary judgment. In response, Hayne filed a Motion for Continuation of Defendant's Motion for Summary Judgment Pursuant to Rule 56(f), arguing that, as discovery had not been completed, summary judgment would be premature.

5

¶8.     A hearing was held on the motion for summary judgment on April 12, 2012. The Doctors argued that the unambiguous language of Hayne's policy denied him coverage as a matter of law, and that further discovery simply was not necessary to decide the issue before the trial court. Hayne argued that further discovery was necessary to determine what exactly The Doctors knew about the nature of Hayne's medical practice and what it had represented to him regarding what his policy covered. Hayne also argued that The Doctors had covered him for a suit brought by the family of a young girl upon whose corpse Hayne had performed an autopsy and that, therefore, The Doctors was estopped from denying him coverage in this instance. After the hearing, the trial court asked Hayne to supplement the record with a "policy booklet" which he claimed represented the policy that he had purchased.[4] The policy booklet produced by Hayne had a different definition of "claim" than that contained in the sample insurance policies adduced by The Doctors. This discrepancy notwithstanding, the trial court granted summary judgment in favor of The Doctors. It found that the policy language was unambiguous in its specific coverage for suits related to injuries to patients of Hayne, which Brewer and Edmonds were not. It also found that the policy's governmental employment exclusion applied to Hayne's claim. Finally, the trial court found that the Louisiana case in which The Doctors had provided coverage to Hayne was factually

---

[4]Apparently, Dr. Hayne did not have an actual copy of his original malpractice insurance policy. By the time of the summary judgment hearing, it had been almost eight years since his original policy with The Doctors had expired. At oral argument, counsel for Hayne informed us that a copy of this document was sought by Hayne in discovery but never received.

distinguishable from the suits brought by Brewer and Edmonds, and it did not estop The Doctors from asserting that Hayne's policy did not afford him coverage from those claims.

¶9.    Hayne filed a motion for reconsideration, for which a hearing was held on September 21, 2012. He again emphasized that discovery had not been completed and that summary judgment should be held in abeyance. The trial court denied the motion. Hayne appealed, arguing that:

1.    The plain language of the policy is ambiguous, and that ambiguity should be construed in his favor to afford him coverage in the claims brought by Brewer and Edmonds.

2.    The governmental and intentional-act exclusionary clauses in his insurance policy should not be held to exclude coverage for Hayne in the claims brought by Brewer and Edmonds.

Because it is dispositive, we limit our review to the first issue.

## STANDARD OF REVIEW

¶10.    In reviewing a lower court's grant of summary judgment, this Court employs a *de novo* standard of review. ***Anglado v. Leaf River Forest Prods.***, 716 So. 2d 543, 547 (Miss. 1998). This Court must consider all of the evidence "in the light most favorable to the non-moving party." ***Palmer v. Anderson Infirmary Benevolent Ass'n***, 656 So. 2d 790, 794 (Miss. 1995) (internal citations omitted). Further, "[t]he interpretation of an insurance policy is a question of law, not one of fact. When a question of law is raised we apply a de novo standard of review." ***Hankins v. Maryland Cas. Co./Zurich American Ins. Co.***, 101 So. 3d 645, 652 (¶ 15) (Miss. 2012) (quoting ***Corban v. United Servs. Auto. Ass'n***, 20 So. 3d 601, 609 (Miss. 2009)).

## ANALYSIS

7

¶11. The Doctors argues that this entire dispute turns on the plain language of Hayne's insurance policy. Hayne contends that the policy language is ambiguous, which, if true, would require the trial court to look beyond the policy language to determine whether Hayne ought to be covered. Further, in his original complaint, he alleged that The Doctors represented to him that it would craft a policy which would insure him against the risks he would face in his particular practice, which necessarily would include third-party claims such as Brewer's or Edmonds's. We turn first to our rules of insurance contract interpretation.

¶12. The language and provisions of insurance policies are viewed as contracts and are subject to the same rules of interpretation as other contracts. *See Hankins*, 101 So. 3d at 653 (¶ 18). The analysis must begin with the language of the policy, which "either affords coverage or not, based upon application of the policy language to the facts presented." *Id.* (quoting *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1156 (Miss. 2010)). Because insurance policies are creatures of contract, if the language is clear and unambiguous, then the language of the policy must be interpreted as written. *Hankins*, 101 So. 3d at 653 (¶ 18) (quoting *Architex*, 27 So. 3d at 1156).

¶13. However, ambiguities in insurance contracts should be "resolved in favor of the insured. . . ." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (¶ 8). "[I]n interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Id.* (citing *Continental Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978)). Generally, when policy language is ambiguous, the Court construes policies "liberally in favor of the insured . . . [and] strongly against the

8

drafter." *J & W Foods*, 723 So. 2d at 552 (¶ 8). So, when the policy language is clear and unambiguous, this Court is bound to give effect to the words of the policy as written. If ambiguity exists, the Court is empowered to interpret the contract as a whole, with the scales weighted firmly in favor of the insured. *See J & W Foods*, 723 So. 2d at 552 (¶ 7) ("If this Court finds an insurance policy ambiguous, we must necessarily find in favor of coverage.").

¶14. Hayne's insurance policy provided by The Doctors states, in pertinent part:

A. WHAT THE EXCHANGE WILL PAY

> The Exchange will pay, on your behalf, all sums which you become legally obligated to pay for a *claim* but excluding any legal liability for punitive or exemplary damages or statutory or other fines.

The policy defines a "claim" as follows:

> Written notice, demand, cross claim, lawsuit, an arbitration proceeding or screening panel, which is first reported to the Exchange during the policy period, which asserts a demand for money or that you should reduce your bill, which alleges injury, disability, sickness, disease, or death *to a patient* arising from your rendering or failing to render professional services subsequent to the retroactive date. . . .

(Emphasis added.) In other words, The Doctors contracted with Hayne that it would pay for and defend him against any claim alleging that Hayne had injured a patient in rendering or failing to render professional services to such patient.[5]

---

[5]During our review of the record, it has become apparent that two different versions of the specimen policy in question were produced. One was attached to The Doctors' Motion for Summary Judgment, and one was attached to one of Dr. Hayne's responses to discovery. The versions of the policy differ in font and format but are, as far as we can tell, indistinguishable in their terms. With regard to the relevant provision in this dispute–the definition of a claim–the policies differ in one way. In Hayne's version, which was given to him by The Doctors in 2008 as a specimen and which is the version cited by The Doctors in its brief, a "claim" is defined as a lawsuit "which alleges injury, disability, sickness, disease, or death to a patient. . . ." In the version attached to The Doctors' Motion for

9

¶15. Brewer's complaint alleges that Hayne engaged in "malicious prosecution, fraud and negligent misrepresentation." Brewer claims that Hayne's incorrect bite-mark identification injured Brewer by subjecting him to the conviction of capital murder and fifteen years in prison, where he suffered numerous physical, psychological, and emotional injuries. Brewer does not claim that Hayne injured the human body upon which he performed the autopsy. He does not claim that the corpse on which the autopsy was performed was Hayne's patient and he does not claim that he himself was Hayne's patient.

¶16. From The Doctors' point of view, the unambiguous language of the policy forecloses any further argument. The Doctors argues that the language of the policy does not provide coverage for Hayne in the context of a suit brought by a wrongfully convicted criminal defendant against whom Hayne had testified. According to The Doctors, the policy provides coverage only for suits alleging injury to a patient. Brewer, however, is alleging injuries to himself. Brewer was never a patient of Hayne's and makes no claim or contention to that effect. Neither does Hayne. Therefore, according to The Doctors, the policy does not cover Brewer's claim against Hayne. The Doctors argues that if anyone was a patient of Hayne's in the context of the Brewer complaint, it was Christine Jackson, the crime victim upon whom Hayne performed the autopsy which formed the basis for his testimony against

Summary Judgment, a "claim" is a lawsuit "which alleges injury; disability; sickness; disease; or death to a patient. . . ." In one version, the list is set off with commas, and in the other, it is set off with semicolons. This ultimately makes no difference in our analysis of the issue, because in either case each word in the list modifies the noun "patient." We simply note that two slightly different versions of the same policy were produced by The Doctors in this case.

Brewer. However, Brewer is not alleging that Hayne injured Christine Jackson, and he is not contending that she was Hayne's patient.

¶17.    We are constrained to agree with The Doctors' position that Brewer simply cannot, by any stretch of the imagination, be considered Hayne's patient. The language of the policy is unambiguous in this regard. Further, "an insured is charged with the knowledge of the terms of the policy upon which he or she relies for protection." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1161 (¶ 26) (Miss. 2011). Although Hayne claims that The Doctors negligently misrepresented to him in the policy booklet that the policy would cover him for suits such as the one he now faces, the plain language of the policy itself unambiguously informs him that it does not. When the language of the policy is unambiguous, knowledge of the policy is imputed to the insured. *See Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So. 3d 1030, 1040-41 (¶¶ 30-31) (Miss. 2011) (holding that insurance policy's unambiguous exclusion of flood damage prohibited the policyholder's suit for coverage for flood damage as a matter of law).

¶18.    Under the specimen policies provided by The Doctors, a "claim" is covered only where the alleged injury happened to a patient of the insured physician. However, Hayne presented a policy booklet he says was sent to him by The Doctors as a representation of his policy. Under the policy booklet, the term "claim" is defined as "a demand for payment of damages arising from a *Professional Services Incident* . . . that is not otherwise excluded by the terms and conditions of this Policy." "Professional Services Incident" is defined as "the performance of, or failure to perform, *Professional Services* by . . . a *Medical Professional*, when acting within the scope of his or her specialty or training," and "Professional Services"

11

are defined as "the diagnosis of, treatment or medical care for, or medical consultation, regarding a patient's medical condition." Hayne argues that this creates an ambiguity in what the language of his policy actually said. However, at the hearing on the motion for reconsideration, counsel for Hayne admitted that the policy form provided by The Doctors was the same as the policy issued to Hayne.

> Trial Judge: All right. Okay. So I want to clear up one thing. That right now you're satisfied that this is the policy that he acted in reliance upon, and there was no other additional earlier policy that was plain and unambiguous; is that correct?

> Hayne's Counsel: Not to my knowledge, Your Honor.

Accordingly, the policy booklet, which contains different terms than the actual policy, does not create any ambiguity in the policy language itself.

¶19. Knowledge of the terms of Hayne's policy is imputed to Hayne. *Mladineo*, 52 So. 3d at 1161 (¶ 26). Hayne's policy unambiguously provides coverage only for claims arising out of injury to patients. While it may be that Hayne was informed by someone that his policy would cover him for the type of malpractice claims he was likely to face, the *plain language* of the policy unambiguously denies coverage for Hayne when sued for malpractice by an exonerated third-party criminal defendant. Such a person is not Dr. Hayne's patient. Hayne's argument that the policy language is ambiguous must fail. When the language of an insurance policy is unambiguous, we are bound to interpret it as written. *Hankins*, 101 So. 3d at 653-54 (¶ 18) (quoting *Architex*, 27 So. 3d at 1157 (¶ 21)). As it is written, Hayne's insurance policy does not cover him for suits brought by exonerated nonpatient criminal defendants alleging injury to themselves due to his negligence.

¶20.    Further, even if a representative of The Doctors had informed Hayne that the policy would cover him for this type of lawsuit, under the facts of this case, we find that the plain language of the policy must control. "A written contract cannot be varied by prior oral agreements. Moreover, as an evidentiary matter, parol evidence to vary the terms of a written contract is inadmissible." *Oaks v. Sellers*, 953 So. 2d 1077, 1082 (¶ 17) (Miss. 2007) (quotation omitted). In *Mladineo*, this Court confronted the issue of whether misrepresentations made by an insurance agent were imputed to the insurer and determined that the insureds could not rely on the representations by the agent when they held in their possession an insurance policy which plainly contradicted those representations. *Mladineo*, 52 So. 3d at 1167 (¶ 53). In that case, the insured had possession of the policy for only four months, which this Court held "was enough time to recognize and remedy the deficit in coverage." Here, Dr. Hayne had his policy for years. The plain language of the policy denied him coverage for injuries to nonpatients that were attributable to his malpractice.[6] Hayne had

---

[6]At oral argument, counsel for Hayne argued that The Doctors provided coverage for a lawsuit filed against him in Louisiana which alleged injuries to the nonpatient family members of a decedent upon which Hayne had performed an autopsy. He argued that this coverage estopped The Doctors from denying coverage in the instant case. However, Hayne never mentioned this either in his main brief or his reply brief to this Court. Briefs to this Court must "identify the issues presented for review," and "[n]o issue not distinctly identified shall be argued by counsel." M.R.A.P. 28(a)(3). The Doctors did mention estoppel, briefly, on one page of the appellee's brief. While we may notice a "plain error not identified or distinctly specified," we find that estoppel was not properly before the Court; and, based upon the trial court's findings that the Louisiana case was distinguishable from the instant case, we decline to reverse summary judgment on that issue.

ample time to correct the deficit in his coverage, and parol evidence at odds with the policy cannot overcome the unambiguous language of the policy.[7]

¶21.     We acknowledge that Hayne without success sought to delay summary judgment until discovery was completed under Mississippi Rule of Civil Procedure 56(f). The trial court did not rule on that pending motion, but, in effect, denied it by its grant of summary judgment. Hayne, however, has not raised on appeal the issue of the propriety of that decision. The Doctors attempted to frustrate discovery while simultaneously moving for summary judgment. This Court looks with disfavor upon "the practice of parties resisting discovery on the one hand and moving for summary judgment on the other." *Smith v. H.C. Bailey Companies*, 477 So. 2d 224, 234 (Miss. 1985). In this particular case, The Doctors' reliance upon the plain language of the insurance policy while denying discovery is troublesome. We are compelled to note the apparent absurdity of Hayne's policy with The Doctors. For many years Dr. Hayne was a well-known pathologist who worked primarily with dead bodies for the state government. He was issued a policy containing a governmental employment exclusion which The Doctors argues covered him only for suits arising out of incidents in which he was *not* working for the government and in which he injured *living* patients.

---

[7]In *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (¶¶ 31-33) (Miss. 2010), this Court did hold that the plaintiffs' negligence claim against the insurance agent could proceed because the plaintiffs may have been able to show that the agent's alleged misrepresentation regarding the plaintiffs' need to purchase flood insurance breached the agent's "professional duty and proximately caused any damage to the Mladineos." Dr. Hayne initially filed suit against Fisher Brown Bottrell Insurance, Inc., but that defendant was dismissed without prejudice by agreement of the parties on June 6, 2011. Accordingly, for the purposes of this appeal, Dr. Hayne is not alleging negligence against a particular insurance agent, and is not claiming that he would have purchased additional insurance but for a particular agent's representations to him. Hayne's suit is against the insurer only.

14

Regardless of what The Doctors may have told Hayne about the coverage terms of his policy, it seems that the company actually sold him an insurance policy that would rarely, if ever, provide coverage for the type of suits he was likely to face.

¶22.    However, as noted above, Hayne failed to raise on appeal the issue of the trial court's effective denial of his Rule 56(f) motion for additional time for discovery. Further, he did not file a motion to compel discovery. For several years, Hayne held an insurance policy which clearly and unambiguously did not cover him for the type of claims made against him by Brewer and Edmonds. In this case, we agree that the language of the policy provides a sufficient foundation upon which summary judgment may stand. The policy language is unambiguous, and it clearly does not provide coverage to Hayne in this instance. In light of the acknowledgment by Dr. Hayne's attorney that the specimen policy provided by The Doctors was the same as that issued to his client, further discovery would not have altered this Court's inevitable conclusion that the plain language of the policy precludes coverage.

## CONCLUSION

¶23.    We affirm the grant of summary judgment in favor of The Doctors by the Circuit Court of the First Judicial District of Hinds County. The clear and unambiguous language of the insurance policy provides coverage for claims which allege injuries to patients of Dr. Hayne. Kennedy Brewer and Tyler Edmonds allege injuries only to themselves, and they simply were not patients of Dr. Hayne. This Court must construe the policy as written, and its clear language denies coverage under the circumstances presented.

¶24.    **AFFIRMED.**

15

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.  WALLER, C.J., NOT PARTICIPATING.**