# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-00332-SCT

*MISSISSIPPI FARM BUREAU CASUALTY*
*INSURANCE COMPANY*

*v.*

*JEAN S. HARDIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2020 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | A. MALCOLM N. MURPHY |
| | SAM S. THOMAS |
| | OWEN P. TERRY |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SAM S. THOMAS |
| | OWEN P. TERRY |
| ATTORNEY FOR APPELLEE: | A. MALCOLM N. MURPHY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 06/17/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    Jean Hardin filed a claim with Farm Bureau, her homeowner's insurance carrier,

following an alleged sudden collapse in the floor of her home.  After Farm Bureau denied

the claim,  Hardin sued Farm Bureau for specific performance, breach of contract, fraud,

misrepresentation, damages, emotional harm and upset, depression, attorneys' fees, costs of

litigation, and punitive damages related to Farm Bureau's denial of coverage for damage to

Hardin's home. Farm Bureau filed a motion for summary judgment, which the trial court denied. Farm Bureau sought, and we granted, interlocutory appeal.

## FACTS AND PROCEDURAL HISTORY

¶2. Jean Hardin purchased a homeowner's insurance policy from Mississippi Farm Bureau Casualty Insurance Company. The effective dates of the policy commenced July 1, 2013, to July 1, 2014. Hardin alleges that the only documents attached to the policy she received in the mail were the Declaration Page, supporting documents, and the Policy HO-2. Hardin alleges that Endorsements HO290, HO431 and HO216 were not attached to the policy and that she never received those documents. Hardin further alleges that during the month of November 2013, she noticed a sudden collapse of the flooring in her house and contacted Farm Bureau about the loss.

¶3. Farm Bureau investigated the loss and determined that only part of the loss would be covered under the policy. Farm Bureau offered Hardin $3,043.35 to cover the damage to the area under the shower in the home. Hardin did not accept the offer, arguing that she was entitled to recover for the total collapse of the property and mold damage. Hardin sued Farm Bureau for specific performance, breach of contract, fraud, misrepresentation, damages, emotional harm and upset, depression, attorneys' fees, costs of litigation, and punitive damages associated with Farm Bureau's denial of coverage.

¶4. Farm Bureau hired Jason G. Grover to investigate the loss. In his report dated December 9, 2013, Grover concluded that the damage to Hardin's home was caused by

2

"long-term deterioration of the subfloor and floor framing" of the home because of the "repeated and long-term exposure to moisture and damp conditions in the crawlspace area due to poor ventilation of the crawlspace, poor site drainage, and the discharge of dryer exhaust into the crawlspace area." Grover also concluded that the "deterioration of the floor framing, other than the deterioration of the wood components directly beneath the guest bathroom shower, had been an ongoing issue that was unrelated to the leak in the shower pan." In Grover's report dated July 18, 2018, he opined that "the deterioration of the floor components was consistent with conditions caused by long-term and repeated exposure to moisture in the crawlspace area." He also reported on the elevation survey, noting that the elevation "allowed rainwater to flow towards and accumulate in the crawlspace."

¶5.     In a deposition, Hardin testified:

> The cause of the mold is almost always water. And the water under the house was caused by the ditch beside my house. The town filled it up on one end to the other road, and beside my house the water would collect in that ditch, and it would seep under the house into - under my crawl space, because the level of the ditch is the same as the level of my crawl space.

¶6.     Hardin's complaint alleges that the mold problem was caused by the failure of the Town of Leakesville to maintain its drainage ditch near her property. Hardin reported the damage after she noticed the floor beneath her son's bedroom door "dropped down about 4 inches." Hardin admits that the walls and the roof remain standing and that only parts of the floor have dropped. Farm Bureau filed a motion for summary judgment, which the trial court denied. Farm Bureau then sought, and we granted, interlocutory appeal.

**STANDARD OF REVIEW**

¶7. "The interpretation of an insurance policy is a question of law, not one of fact . . . . When a question of law is raised we apply a de novo standard of review." *Miss. Farm Bureau Cas. Ins. Co. v. Smith*, 264 So. 3d 737, 742 (¶ 16) (alteration in original) (internal quotation marks omitted) (Miss. 2019) (quoting *Hankins v. Md. Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 652 (¶ 15) (Miss. 2012)). "A trial court's grant or denial of summary judgment is reviewed de novo." *Id.* (internal quotation marks omitted) (quoting *Miss. Baptist Med. Ctr., Inc. v. Phelps*, 254 So. 3d 843, 844 (¶ 5) (Miss. 2018)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶8. "The language and provisions of insurance policies are viewed as contracts and are subject to the same rules of interpretation as other contracts." *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1180 (¶ 12) (Miss. 2014) (citing *Hankins*, 101 So. 3d at 653 (¶ 18)). "[I]nsurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated." *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1166 (¶ 16) (Miss. 2004) (citing *U.S. Fid. & Guar. Co. v. Knight*, 882 So. 2d 85, 92 (¶ 32) (Miss. 2004)). "Under 'named perils' coverage, the burden

4

of proof rests with the insured 'to prove that the damages sustained were covered by the peril insured against . . . .'" **Corban v. United Servs. Auto. Ass'n**, 20 So. 3d 601, 619 (¶ 52) (Miss. 2009) (alteration in original) (quoting **Lunday v. Lititz Mut. Ins. Co.**, 276 So. 2d 696, 699 (Miss. 1973)).

## DISCUSSION

¶9.     Farm Bureau raises several issues on interlocutory appeal. First, Farm Bureau argues, because the damage to Hardin's home resulted from the Town of Leakesville's ditch near Hardin's home, the damage does not fall within a "Peril Insured Against" under the policy. Second, because Hardin's home is still standing, Farm Bureau argues that the home is not in a state of collapse as defined by the policy.  Third, according to Farm Bureau, because the Town of Leakesville's filling in the ditch beside Hardin's home caused the long-term excess moisture under the home and the resultant mold, the policy's "Water Damage Exclusion" appplies.  Finally, Farm Bureau argues that it has an "arguable or legitimate" basis for denying Hardin's claims.

> **I.      The damage to Hardin's home was the result of drainage from a nearby ditch, thus the damage does not fall within a "Peril Insured Against" under the policy.**

¶10.    Farm Bureau contends that the policy requires that for the insured to be covered, damage to the insured's home must result from a "Peril Insured Against."  Hardin argues that she never received any endorsements, thus the endorsements are not a part of the policy. Hardin admits that HO-2, the policy booklet, is a part of the policy.  Farm Bureau further

5

argues that whether the endorsements were attached is irrelevant because the policy booklet provides an exemption for coverage. The renewal declaration that Hardin admits she received states the following:

> The terms of this policy shall be effective at the address and for the policy period shown above. The required renewal premium must be paid by the insured on or before the expiration of the current term. *Declarations of the policy are subject to all other terms and conditions of the policy and replace previously issued Declarations and should be attached to form H0-2 and become a permanent part of your policy.*

(Emphasis added.)

¶11. Section I of the policy reads, "[w]e insure for direct physical loss to the property described in Coverages A [dwelling], B [other structures] and C [personal property] caused by any of the following perils unless the loss is excluded under Section I - Exclusions." The policy then goes on to list sixteen perils for which the policy provides coverage. Peril twelve, titled "Accidental Discharge or Overflow of Water or Steam[,]" reads, "[t]his peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance." However, the policy states that the peril does not include loss "[o]n the 'residence premises' caused by accidental discharge or overflow which occurs off the 'residence premises.'" Additionally, there is an exclusion listed in peril twelve. The exclusion reads, "[w]ater damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril."

6

¶12.   In her deposition testimony, Hardin admitted that the damage to her home was caused by moisture under the house for a long period of time, leading to mold. She further admitted that the excess moisture was caused by the Town of Leakesville's filling in the ditch beside her home. Hardin also alleged in her complaint that "the Town of Leakesville caused a drainage ditch to fail and further failed to maintain the drainage ditches and as a result caused the 'Mold' problem which destroyed the underneath of Plaintiff's home." Hardin stated the following in her deposition:

> Mr. Thomas: So just for clarification: Your contention is that all of the mold that you're complaining about was due to the excess moisture under the house that came from the ditch situation created by the Town of Leakesville?
>
> Hardin: Right. And when we're through, I think you ought to go sue the Town of Leakesville too.

¶13.   Pursuant to Hardin's own testimony, the damage resulted from accidental discharge off of the resident premises. Under the terms of the policy, the damage is only covered if it is caused by a "Peril Insured Against." The water damage to Hardin's home was not covered. Accordingly, the Court reverses the trial court's decision and grants summary judgment in Farm Bureau's favor on that claim.

**II.      Hardin's home is not in a state of collapse as defined by the policy.**

¶14.   Farm Bureau argues that Hardin's home is not in a state of collapse as defined by the policy. The policy defines "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." The policy further states as follows:

7

[a] building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or explosion.

¶15. Hardin admitted in her deposition testimony that her home is still standing, even though it shows signs of sagging. Therefore, her home is not in a state of collapse pursuant to the policy.

### III. Farm Bureau's water damage exclusion applies.

¶16. Farm Bureau's policy booklet contains an exclusion for certain types of damage caused by water. The policy booklet contains the following language:

Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

Water which:

(1)     Backs up through sewers or drains; or

(2)     Overflows or is otherwise discharged from a sump, sump pump or related equipment;

*Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure;*

*This Exclusion (A.3.) applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.*

8

(Emphasis added.)

¶17. As stated above, Hardin admitted in her deposition that the damage was caused by the Town of Leakesville's failure to maintain a ditch. In her deposition, Hardin stated:

> The cause of the mold is almost always water. And the water under the house was caused by the ditch beside my house. The town filled it up on one end to the other road, and beside my house the water would collect in that ditch and it would seep under the house into - under my crawl space, because the level of the ditch is the same as the level of my crawl space.

¶18. "Under 'named perils' coverage, the burden of proof rests with the insured 'to prove that the damages sustained were covered by the peril insured against . . . .'" *Corban*, 20 So. 3d at 619 (¶ 52) (quoting *Lunday*, 276 So. 2d at 699). Hardin's testimony not only does not prove that the damage to her home was covered by a peril insured against, it also proves that the damage falls under an exclusion. Accordingly, even if the damage was from one of the perils insured against, the damage falls under the policy's broad water-damage exclusion.

     **IV.**    **Farm Bureau had an arguable or legitimate basis to deny Hardin's claim.**

¶19. "In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (¶ 9) (Miss. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (¶ 12) (Miss. 1998)). Hardin's home was not in a state of collapse, and the damage to Hardin's home did not result

9

from a peril insured against. Even if the damage resulted from a peril insured against, the policy's broad water-damage exclusion applies. Accordingly, the Court holds that Farm Bureau had an arguable or legitimate basis for denying Hardin's claim.

## CONCLUSION

¶20.    The trial court erred in denying Farm Bureau's motion for summary judgment because Hardin demonstrated proof that the water damage to her home was caused by the failure of the Town of Leakesville to maintain the ditch beside her home. Thus, because Hardin's damages are not covered under the policy, Farm Bureau is entitled to summary judgment. Accordingly, we reverse the trial court's decision denying Farm Bureau's motion for summary judgment and remand the case to the trial court for further proceedings consistent with today's opinion to determine whether any other claims survive.

¶21.    **REVERSED AND REMANDED.**

   **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**