# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2025

Lyle W. Cayce
Clerk

———————

No. 24-60178

———————

Mark Alan Barger, Jr.; Margie Barger,

*Plaintiffs—Appellants*,

*versus*

State Farm Fire and Casualty Company,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:22-CV-90

———————————————————

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellants Mark Alan Barger, Jr., and Margie Barger ("the Bargers") appeal the district court's grant of summary judgment in favor of their homeowners' insurer, Defendant-Appellee State Farm. The Bargers contend that the district court, in evaluating their insurance claim, erroneously assigned them the burden of proving that a specified "named peril," or "covered event," caused damage to their roof and necessitated its

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60178

replacement. We agree. Accordingly, we REVERSE the district court's ruling regarding the proper allocation of the burden of proof relative to causation; VACATE the district court's judgment of dismissal; and REMAND the action to the district court for further proceedings consistent with this decision.

## I.

In June 2021, a storm passing through Greenwood, Mississippi, caused a massive amount of rainfall in a relatively short period of time— almost 8 inches of rain on June 10th and a total of approximately 9.25 inches over a 24-hour time period. During the storm, rainwater leaked through the Bargers' roof and interior ceilings in at least seven different places, causing interior damage to all of the one-story house's three bedrooms, the dining and living rooms, a hallway, and the foyer. Contending that their eleven-year-old roof did not leak prior to the June 2021 rainstorm, and then continued to leak thereafter, the Bargers urged State Farm to pay to replace the entire roof. State Farm refused to incur the approximately $16,000 cost, having concluded that nine wind-damaged shingles and a small area of roofing membrane constitute the only physical roof damage covered by the Bargers' policy.[1]

Eventually, in March 2022, the Bargers paid to have a new roof installed on their home. Shortly thereafter, in May 2022, the Bargers sued State Farm for breach of contract. Upon considering a motion filed by State

---

[1] The Bargers do not seek to recover damages in excess of the sums that State Farm paid to repair the damage to their home's interior and their personal property. Only State Farm's refusal to pay to replace the entirety of the Bargers' roof remains at issue. The replacement cost amount in dispute is $16,023.79, plus the increased cost of the materials (approximately $3,120 to $5,000) used to replace the roof.

Farm, the district court granted summary judgment in its favor. This appeal followed.

## II.

Our review of orders granting summary judgment is *de novo*. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.,* 576 F.3d 221, 226 (5th Cir. 2009). Summary judgment "shall" be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a ruling on a motion for summary judgment, we view all facts and evidence in the light most favorable to the nonmoving party. *Xtreme Lashes, LLC*, 576 F.3d at 226.

## III.

On appeal, the Bargers contend, *inter alia*: (1) given the broad "all risk" or "open peril" coverage provided by the dwelling portion of their insurance policy—designated as "Coverage A"—the district court erroneously assigned them the burden of proving that a specified "named peril" (i.e., windstorm or hail), or "covered event," caused their claimed additional roof damages; and (2) once they established an "accidental direct physical loss" to their property, the burden shifted to State Farm to prove that a policy exclusion applied. The Bargers are correct.

## A.

Effective August 28, 2020, to August 28, 2021, the insuring language set forth in the "LOSSES INSURED" section of the Bargers' State Farm policy states, in pertinent part:

**SECTION I — LOSSES INSURED**

**COVERAGE A — DWELLING**

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I — LOSSES NOT INSURED** or otherwise

No. 24-60178

excluded or limited in this policy. However, loss does not include and *we* will not pay for any *diminution in value*.

**COVERAGE B — PERSONAL PROPERTY**

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I — LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for any *diminution in value*.

**1. Fire or lightning**

**2. Windstorm or hail**. This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

**3.– 17. [omitted].**

## SECTION I — LOSSES NOT INSURED

1. *We* will not pay for accidental direct physical loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

* * *

   g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis, or rust;

4

i.  wet or dry rot;

\* \* \*

However, *we* will pay for any resulting loss from items a. though l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

\* \* \*

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

\* \* \*

b.  defect, weakness, inadequacy, fault, or unsoundness in

(1) planning, zoning development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the ***residence premises***; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

No. 24-60178

## SECTION I — LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE A—DWELLING**

**1. A1—Replacement Cost Loss Settlement—Similar Construction**

a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I—PROPERTY COVERAGES, COVERAGE A—DWELLING**, except for wood fences, subject to the following:

* * *

**2. A2—Replacement Cost Loss Settlement—Common Construction**

a. *We* will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I—PROPERTY COVERAGES, COVERAGE A—DWELLING**, except for wood fences, subject to the following:

* * *

6

## B.

In granting summary judgment to State Farm, the district court reasoned:

> [The Bargers do not dispute that] while the [State Farm] Policy covers damage associated with wind storms and hail, it does not cover damages associated with wear, tear, decay, latent defect, or wet or dry rot. Thus, the pivotal issue here is whether the cause of the damage to the Bargers' home is covered under the Policy.[2]

> * * *

> Because the Bargers' lack of causation evidence means they fail to meet their burden of proving a covered event caused the additional damage and because the only expert testimony probative of causation links latent construction defects to such damage, State Farm is entitled to summary judgment on the breach of contract claim.[3]

Notably, as the Bargers point out, the district court, for reasons not readily apparent in the record, erroneously evaluated their roof damage claim utilizing the policy language applicable to the "Coverage B—Personal Property" portion of the Section I—LOSSES INSURED section of the policy rather than the "Coverage A—Dwelling" portion. Indeed, the district court quotes the above-stated insuring language for "accidental direct physical loss to the property described in Coverage B" caused by "Windstorm or hail."[4]  Though acknowledging the error, State Farm maintains that the district court's reference to Coverage B, rather than Coverage A, "had no impact on the application of the burden of proof and

---

[2] *See* March 15, 2024 Opinion and Order at 9.

[3] *Id.* at 11.

[4] *Id.* at 11.

was nothing more than a clerical error [that] did not affect the outcome of the case and should be disregarded as harmless."[5] On the instant record, however, we are not convinced that State Farm's assessment is correct.

In reaching this conclusion, we emphasize that the language of the "Coverage A—Dwelling" section of the Bargers' State Farm policy unquestionably provides "all-risk" coverage, whereas the "Coverage B—Personal Property" section only covers property loss caused by certain specified perils. *See Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So.3d 1030, 1039 (Miss. 2011) (Policy language stating that "[w]e cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under . . . Property Exclusions . . . create[s] all-risk coverage for the dwelling . . .[;] conversely Coverage C, Personal Property, provides coverage for nine enumerated causes of loss, including windstorm or hail, which makes th[at] coverage a named perils, or specific perils, policy."). And, in *Corban v. United Services Auto Ass'n*, 20 So.3d 601 (Miss. 2009), the Mississippi Supreme Court differentiated the allocation of the burden of proof in an "all-risk" policy from that applicable to a "named perils" policy, explaining:

> The parties agree that the subject policy provides "all-risk" coverage as to "Coverage A—Dwelling" . . . . "The purpose of an 'All-Risk' policy is to insure losses when the cause of the loss is unknown or the specific risk was not explicitly contemplated by either party." Lee R. Russ & Thomas F. Segalla, 7 Couch on Insurance § 101:7 (3d ed. 2007). Under such coverage, "the insured has the initial burden to prove that the loss occurred." *Id.* Thereafter, the burden shifts to the insurer, as "[i]n an all-risk . . . policy where an exclusion is specifically pleaded as an affirmative defense[,] the burden of proving such affirmative defense is upon the

---

[5] *See* Appellee Brief, ECF 23, pp. 25–26.

insurer. . . ." *Lunday v. Lititz Mut. Ins. Co.,* 276 So.2d 696, 698 (Miss. 1973). *See also Morrison Grain Co. v. Utica Mut. Ins. Co.,* 632 F.2d 424, 430 (5th Cir. 1980) ("[i]t would seem to be inconsistent with the broad protective purposes of 'all risks' insurance to impose on the insured . . . the burden of proving the precise cause of the loss or damage.").

\* \* \*

This Court finds that with respect to the "all-risk" coverage of "Coverage A—Dwelling". . . , the Corbans are required to prove a "direct, physical loss to property described." Thereafter, USAA assumes the burden to prove, by a preponderance of the evidence, that the causes of the losses are excluded by the policy, in this case, "[flood] damage." USAA is obliged to indemnify the Corbans for all losses under "Coverage A—Dwelling" . . . which USAA cannot establish, by a preponderance of evidence to have been *caused* or *concurrently contributed to* by [flood] damage. . . ."

\* \* \*

[In contrast,] [u]nder [the policy's] "named perils" coverage, the burden of proof rests with the insured "to prove that the damages sustained were covered by the peril insured against. . . ." *Lunday*, 276 So.3d at 699. *See also* Appleman on Insurance at § 192.09 (under "named peril" coverage, "the insured has the burden of proving that any losses were caused by a peril covered by the policy—indemnity is not available unless the loss falls under one of the specifically enumerated coverages."); Russ & Segalla, 7 Couch on Insurance at § 101:7 (" '[n]amed perils'. . . policies provide coverage only for the specific risks enumerated in the policy and excludes all other risks.").

We find that with respect to the "named perils" coverage of "Coverage C—Personal Property," the Corbans are required to prove, by a preponderance of the evidence, that the "direct

physical loss" to the property described in Coverage C was caused by wind.

*Corban*, 20 So.3d at 618–19.

Under Mississippi law, as set forth in *Corban*, the Bargers' burden of proof regarding the "all-risk" coverage for their dwelling (provided under Coverage A of the State Farm policy) is satisfied by proof establishing that an "accidental direct physical loss occurred to their dwelling." *Id*. It is undisputed that water produced by a July 2021 rainstorm leaked through the Bargers' roof and ceiling into seven different areas of their house, causing significant interior damage. And, according to the Bargers, the roof thereafter continued to leak.

Construing the summary judgment evidence in the Bargers' favor reveals a genuine dispute of material fact relative to whether the components of the house's roof system suffered the necessary "accidental direct physical loss" as a result of the massive amount of rainfall that occurred during the June 10, 2021 historic storm. Yet, the district court, quoting the causation requirements for *Coverage B's* "specified perils" coverage, granted summary judgment in State Farm's favor relative to the Bargers' breach of contract claim, reasoning that "the *Bargers'* lack of causation evidence means *they* fail to meet *their* burden of proving a *covered event* caused the additional damage[.][6]

Based on the foregoing, we are convinced that the district court improperly allocated the burden of proof regarding causation to the Bargers, rather than to State Farm. But we are *not* convinced that that error had no impact on the district court's summary judgment decision. And, given the lack of clarity in the district court's explanation of its ruling, we do not assess

---

[6] *See* March 15, 2024 Opinion and Order at 11 (emphasis added).

No. 24-60178

whether the parties satisfied their respective summary judgment burdens with respect to a policy exclusion. That will be for the district court to assess on remand.

## IV.

For the reasons stated herein, we REVERSE the district court's summary judgment ruling regarding the proper allocation of the burden of proof relative to causation; VACATE the summary judgment dismissal of the Bargers' breach of contract claim; and REMAND this action to the district court for further proceedings consistent with this decision.

REVERSED; VACATED; REMANDED.